## J. B. Kelly, Appellee, v. McCormick-Murray Manufacturing Company, Appellant.

1.   JUDGMENT, § 82*—*when affidavit not in compliance with stipulation for opening of judgment.*   Where after entry of a judgment by confession it was agreed by stipulation between the parties that the case should be opened and tried by the court and that the defendant would give the plaintiff notice of all special defenses to be offered, *held* that an affidavit made before the making of the stipulation was not a compliance therewith.

2.   CORPORATIONS, § 175*—*when sale of stock to by stockholder deemed to be in good faith.*   A sale by a stockholder of the stock in a corporation to the corporation, *held* to have been made in good faith and that the assignee of notes given by the corporation in payment thereof was entitled to recover the face value thereof.

3.   CORPORATIONS, § 481*—*what is not defense available to in action on note.*   A corporation cannot, in an action by an assignee of notes given to a stockholder in payment of stock bought by him, defend on the ground that the stockholder fraudulently overvalued property turned into the corporation by him at the time of its organization.

4.   CORPORATIONS, § 337*—*when have right to buy and sell shares of own stock.*   A corporation may, if it acts in good faith, buy and sell shares of its own stock.

5.   APPEAL AND ERROR, § 1035*—*when errors not considered on appeal.*   Errors not assigned or argued will not be considered on appeal.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.   Heard in this court at the October term, 1914.   Affirmed.   Opinion filed April 21, 1916.

STERLING & WHITMORE, for appellant.

DE MANGE, GILLESPIE & DE MANGE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

A judgment was on March 13, 1914, entered by confession for $1,037.56 and costs, by J. B. Kelly against

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the McCormick-Murray Manufacturing Company, a corporation. The notes were executed by the corporation by W. B. McCormick, its president. One note is for $500 dated December 6, 1912, payable to the order of J. L. Murray & Company; the second is for $100 dated January 5, 1913, payable to J. L. Murray; the third is for $169.37 dated December 13, 1913, payable to the J. L. Murray Company, and the last for $200 dated December 26, 1913, payable to the J. L. Murray Company. All the notes are assigned to the plaintiff. On April 11, 1914, a motion supported by an affidavit made by W. B. McCormick was entered by the defendant to have the judgment opened and for leave to plead. On October 10, 1914, it was stipulated that the motion should be allowed and the case tried by the court without a jury. The stipulation states "that an issue of fact shall be made up without formal pleading * * *; that the defendant will give the plaintiff notice of all special defenses to be relied upon before the trial; * * * and in the event of a final judgment for plaintiff, the present judgment, execution, levy and return shall by mutual consent be amended to conform to the correct amount of indebtedness, * * * and that the present judgment shall stand as security for the final judgment." An order opening the judgment was made and the case tried at the February term, 1915. Judgment was rendered that the judgment heretofore entered stand in full force and effect as of the date of the rendition of said judgment and that said judgment be closed.

An objection was made to the evidence offered by appellant on the ground that no notice had been given of any special defense, and counsel for appellant insists that the affidavit gave sufficient notice of the defenses relied upon. The affidavit, among other things, states that the affiant executed said notes as president and treasurer of the company and that the company had not authorized him to execute judgment notes, and

"that the said corporation received no consideration for said notes." It then attempts to set up what are claimed to be facts under which the corporation was organized; that J. L. Murray and one Rifenback were the owners of a stock of merchandise, formulæ and proprietary rights formerly owned by the Otsego Company, and that they sold the said property to appellant for $19,900 in payment for capital stock of appellant subscribed by them, when the value of the property turned over to the corporation did not exceed $500, and that Murray afterwards turned his stock back to the corporation and received the $500 note sued upon, and other notes which were in part paid by the giving of the other three notes sued upon; that when the property formerly owned by the Otsego Company was turned over to the corporation, Murray was a stockholder and officer of the appellant, and that appellee is a partner of Murray, and had full notice of said transactions and paid no consideration for said notes.

Under the stipulation made October 10, 1914, the appellant agreed to give appellee notice of any special defense. The affidavit made several months before the making of the stipulation is not a performance of the terms of the stipulation regarding notice.

The appellant not having given any notice of any special defense subsequent to the making of the stipulation, all that remained for the court to do was to compute the amount due on the notes to the time of the judgment and enter judgment accordingly.

If it could be held that the affidavit was notice to appellee of any special defenses, the evidence shows that appellant was a corporation organized in the fall of 1911, with 2,500 shares of stock of the par value of $10 each, of which W. B. McCormick subscribed for 870 shares; J. L. Murray, 870; Rifenback, 500; and a few others subscribed for the remainder of the stock in small amounts. The report made to the Secretary

of State, sworn to by McCormick and Murray, shows that $5,100 was paid in on the capital stock in cash and $19,900 in property. McCormick, who was the president, treasurer and general manager of the appellant, testified that the property taken in payment of $19,900 of the stock consisted of 275 empty boxes, a typewriter, two or three boxes of soap, a barrel of metal polish, a wooden desk and $125 of Iowa accounts, the entire property being worth not to exceed $375. On June 8, 1913, as president of the corporation, he made a report in writing to R. G. Dunn & Company which showed that the corporation had assets amounting to $20,000, which consisted of merchandise $15,000, accounts at "realizable value $5,000" and cash $800, and that its total liabilities were $4,800; this report further stated that appellant carried $7,500 insurance and did an annual business of $40,000. Bernard Smith, a director and the secretary of appellant, testified that in December, 1912, the assets of appellant were between $8,000 and $8,500 and its liabilities $3,800.

The evidence shows that J. L. Murray was a partner in the firm of J. L. Murray & Company, dealers in automobiles; that J. L. Murray & Company traded a new $1,000 automobile for 200 shares of the stock of appellant; that Bernard Smith had become the owner of 926 shares of the stock of appellant and was a director and the secretary of appellant and assisted McCormick, who was the president and treasurer, in the management of the business; that in December, 1912, McCormick and Smith thought they could buy the capital stock held by J. L. Murray and J. L. Murray & Company, and sell it at a profit, and did buy 400 shares in the name of the corporation and 100 in the name of McCormick. They paid for the stock taken to the corporation by giving two $500 notes and two $400 notes executed by the corporation by McCormick the president. The $500 note sued on is one of the

notes made at that time. McCormick paid $400 cash for the Murray stock bought by him. When the notes became due, the $200 note and $167.37 note were given to J. L. Murray & Company for money borrowed by the corporation to pay some of the notes, which had been transferred to other parties. The $100 note was given for money borrowed by appellant from Murray and used in the business after Murray had no interest in the corporation.

McCormick testified that in the fall of 1913, he became the owner of all the outstanding capital stock of the appellant, and apparently held all the stock when some of the notes sued on were made by him as president. In January, 1914, while holding all the outstanding capital stock of the appellant, he sold the entire business of appellant for $4,000 and agreed with the purchaser to pay "all just debts of the company."

This is a suit at law. No stockholder or creditor, other than appellee, is a party or has any direct interest in the case. The corporation and appellee only are interested. The sale of the stock to the corporation appears to have been made in good faith by Murray, and Murray & Company and the corporation, when the corporation from the financial statement made in June thereafter by McCormick, and from the evidence of Smith, appears to have been solvent. A corporation cannot urge in defense of a suit by a party, who at one time was a stockholder, that the stockholder fraudulently overvalued property turned over to the corporation in payment of a stock subscription; while such fraud would render the transaction voidable as to creditors and other stockholders prejudiced thereby, it is binding upon the corporation and, between the corporation and such stockholder, the stock subscription is fully paid. *Parmelee v. Price,* 208 Ill. 545; *Bouton v. Dement,* 123 Ill. 142; *Higgins v. Lansingh,* 154 Ill. 301; note to 19 L. R. A. (N. S.) 115.

A corporation may, if it acts in good faith, buy and sell shares of its own stock. *Republic Life Ins. Co. v. Swigert*, 135 Ill. 150; *First Nat. Bank of Peoria v. Peoria Watch Co.*, 191 Ill. 128. The officers of appellant thought that they could make some profit for appellant, and the evidence shows that they did sell some of the stock bought from Murray at a profit. We fail to see how appellant can urge in a suit at law the defense of want of consideration or set-off to notes given for the purchase of its own stock, under the circumstances surrounding the giving of the notes as shown in this case.

No assignment of error is made or any argument which questions the amount of the judgment, or the amount of the costs taxed; neither is any argument made concerning any ruling upon propositions of law, hence none of these questions are before us for review. The judgment is affirmed.

*Affirmed.*